UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GOLDSTEIN DEVELOPMENT CORP.,         :
                                     :
      Interested Party / Appellant,   :
                                     :         13 Civ. 2310 (LGS)
      -against-                       :
                 .  :         ORDER AND OPINION
BERLIN & DENMAR DISTRIBUTORS, INC.,  :
                                     :
      Debtor / Appellee.              :
                                     :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/ 31/13___

LORNA G. SCHOFIELD, District Judge:

Goldstein Development Corp. ("Goldstein") appeals from the February 25, 2013 decision

and order (the "Order") of the Bankruptcy Court for the Southern District of New York,

granting in part and denying in part Goldstein's July 4, 2012 motion seeking the return of its

deposit of $94,000, made in connection with Goldstein's highest bid submitted to purchase

certain properties of the Appellee and Debtor Berlin & Denmar Distributors, Inc. ("Berlin" or the

"Debtor"), in an auction held before the Bankruptcy Court.  After full briefing, an evidentiary

hearing and oral argument, Judge Stuart M. Bernstein ordered Goldstein to forfeit $50,000 of its

$94,000 deposit, the return of which Goldstein now seeks on appeal.  For the reasons stated

below, the Bankruptcy Court's Order is affirmed in all respects.

## I. Background

### A. Facts

Before the bankruptcy, Berlin operated a food distribution business from cooperative

units located at the Hunts Point Cooperative Market ("Hunts Point"), a desirable location for

food distribution in the Bronx, New York.  On October 21, 2010, Berlin filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code.  On January 9, 2012, Judge Bernstein

entered an order approving the "Disclosure Statement" regarding the Second Amended Plan of

Liquidation (the "Plan").  The centerpiece of the Plan was the sale of the Debtor's shares in four

cooperative units located at Hunts Point, of which the shares of three units are at issue here (the

"Coop Shares").

The Plan and the Disclosure Statement set forth procedures pursuant to which prospective

buyers could bid on the Coop Shares (the "Bidding Procedures.")  The Bidding Procedures

defined a "Qualified Competing Bidder" as "a party which the Debtor reasonably believes to be

financially able and interested in consummating a purchase of the Property" and that submits an

offer of purchase.  (Plan § 6.9 (d)).   Each Qualified Competing Bidder was required to pay the

Debtor $50,000, defined in the Bidding Procedures as the "Deposit." (Plan §6.9(c), (g)).  The

Bidding Procedures further provided that if any Qualified Competing Bidder became the

"Purchaser," the Deposit would be deemed non-refundable and "shall be forfeited to the Debtor

if such Purchaser fails to close for any reason whatsoever."  (Plan § 6.9(i)).   Under the terms of

the Plan, the "Purchaser" was defined as a "successful purchaser of any of the units of the

Debtor's Property which is being sold pursuant to this Plan."  (Plan § 1.57).  The Bidding

Procedures further provided that "a Qualifying Competing Bid must not be contingent upon

either financing or the conduct or results of any due diligence investigation."  (Plan § 6.9(l)).

On March 5, 2012, Goldstein faxed the Debtor an offer to pay $700,000 for the Coop

Shares.  Berlin responded by email stating that "[i]n order to close on the sale, the buyer must

complete the sublease application. . . ."  (March 6, 2012 email, Ex. B to Berlin's Objection to

Goldstein's Motion).  The sublease application was attached to the email for Goldstein to

complete.  The application included a pre-printed representation by the applicant that it operated

a business in the food industry.

Judge Bernstein conducted the auction on March 7, 2012.  Of the bidders, Goldstein made the highest bid of $940,000, which was accepted.  At the conclusion of the auction, Goldstein paid a 10% deposit of $94,000 to Berlin's counsel, which exceeded the $50,000 Deposit required from a Qualified Competing Bidder under the Bidding Procedures.  On March 22, 2012, Judge Bernstein confirmed the sale of the Coop Shares to Goldstein in an order (the "Auction Order"), which incorporates the Plan, including the Bidding Procedures.   The Auction Order confirmed that Goldstein offered the highest and best price and was deemed to be the "Purchaser" of the Coop Shares.  (Auction Order at 2).

On the same day, March 22, 2012, Hunts Point sent an email to Berlin (which it immediately forwarded to Goldstein) expressing "serious concerns and questions" concerning Goldstein's purchase of the Coop Shares, including that Goldstein was not engaged in the food distribution business, a requirement for becoming a shareholder; and that Goldstein's intended sublease of the units to another entity was prohibited.  Hunts Point offered to discuss the issues with Goldstein, but no discussions occurred.  On April 28, 2012, Goldstein informed Berlin that it could not correct the deficiencies to be able to complete the transaction and sought a refund of the $94,000 deposit.

## B.  Hearing and Decision of the Bankruptcy Court

On November 20, 2012, Judge Bernstein heard counsel's arguments on Goldstein's application for the return of its deposit.  On January 24, 2013, he held an evidentiary hearing at which Goldstein called two witnesses and the Bankruptcy Court received exhibits.  After the testimony, the Bankruptcy Court again heard argument and then issued an oral opinion, including findings of fact and conclusions of law.

Judge Bernstein relied on the terms defined in the Plan and Bidding Procedures to reach his decision.  The Bidding Procedures provided that a Qualified Competing Bidder that became the Purchaser would forfeit the deposit if it "fail[ed] to close for any reason whatsoever."  (Plan § 6.9(i)).  Judge Bernstein found that Goldstein was a Qualified Competing Bidder as defined in the Bidding Procedures because the Debtor reasonably believed that Goldstein was financially able and interested in consummating the purchase.  The Judge rejected Goldstein's argument that, because it did not satisfy Hunts Point's requirements, Goldstein was not a Qualified Competing Bidder, as those requirements were not part of the definition of that term.

Judge Bernstein also rejected the argument that Berlin had wrongfully induced Goldstein to bid.  The Judge did not credit Goldstein's witness, who testified that a "Mr. Norman," whom the witness believed to be the chief executive of Berlin, called Goldstein's subtenant about the availability of the Hunts Point coop units, and then arranged for the witness to pay $5,000 cash in exchange for the assurance that Goldstein would be the successful bidder for the Coop Shares. Judge Bernstein noted that this fact was never raised prior to or at the time of the auction or in any of Goldstein's papers.

Judge Bernstein found, and the uncontroverted testimony showed, that Goldstein had not done any due diligence before bidding, and in particular had not read or heeded the preprinted representation on the shareholder application form that the applicant operated a business in the food industry.

While Judge Bernstein relied on the definitions of "Qualified Competing Bidder" and "Purchaser" to determine that Goldstein must forfeit the Deposit, he relied on the definition of the term "Deposit" to limit the forfeiture to $50,000 rather than Goldstein's entire $94,000 payment.  The Bankruptcy Court reasoned that, because "Deposit" was defined as the $50,000

that a Qualified Competing Bidder was required to pay, only that amount was subject to forfeiture.

Finally, the Bankruptcy Court cited the general rule of the importance of enforcing the finality of bankruptcy sales and strictly enforcing the terms of a sale against a buyer, including when a defaulting purchaser will lose its deposit, citing *Target Two Associates, L.P.*, No. 04 Civ. 8657, 2006 WL 3068668, at *6 (S.D.N.Y. 2006), *aff'd*, 282 F. App'x 914 (2d Cir. 2008). Judge Bernstein found that equitable considerations that might warrant a different result are not present here. "The bid procedures were clear. Goldstein willingly and knowingly assumed the risk of losing its deposit if it could not close for any reason whatsoever. It obviously failed to conduct the necessary due diligence to determine that it could become a shareholder . . . or sublet the units." (Transcript of Jan. 24, 2012 hearing at 79).

Judge Bernstein granted Goldstein's application in part, to the extent that he required Berlin to return $44,000 of Goldstein's $94,000 deposit. Goldstein now appeals from this decision and seeks the return of the entirety of its $94,000 deposit.

## II.  Jurisdiction and Standard of Review

Final orders of the bankruptcy court may be appealed to the district court as of right. 28 U.S.C. § 158(a)(1). The district court "independently review[s] the factual determinations and legal conclusions of the bankruptcy court." *Theatre Row Phase II Associates v. H & I Inc.*, 443 B.R. 592, 596 (S.D.N.Y. 2011) (quoting *Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176 (2d Cir. 2010)). A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Fed. R. Bankr. P. 8013. On appeal, the legal conclusions of the bankruptcy court are reviewed de novo, but the findings of fact are reversed only when they are "clearly erroneous." *In re Worldcom, Inc.,* 339 B.R. 836, 840 (S.D.N.Y. 2006).

### III.  Discussion

The record below provides ample support for Judge Bernstein's factual finding that Goldstein failed to close on this transaction because it failed to conduct appropriate due diligence and his legal conclusion that Goldstein should forfeit its Deposit.  The Bankruptcy Court's decision is based on the straightforward application of its factual findings to the terms of the Plan and the Bidding Procedures.  Appellant takes issue with both that court's factual findings and legal conclusions, which are addressed in turn below.

Appellant argues that it was not a "qualified purchaser" because it did not meet the conditions to be able to close the transaction.  "Qualified purchaser," however, is not a defined term in the Plan or the Bidding Procedures, which instead defines the terms "Purchaser" and "Qualified Competing Bidder."  The Bankruptcy Court correctly rejected the argument that Goldstein was not a Qualified Competing Bidder based on its finding that Goldstein met the definition of that term in the Plan, regardless of whether Goldstein may have been disqualified from buying the Coop Shares under Hunts Point's requirements.  The Bankruptcy Court also correctly found that Goldstein was a Purchaser.  "Purchaser" is defined as a "successful purchaser of any of the units of the Debtor's Property," (Plan § 1.57), and it is clear from the forfeiture provision that Purchaser status is measured as of the completion of the auction and not completion of the closing.  Otherwise, the provision that a Purchaser would forfeit the Deposit, if "the Purchaser fails to close for any reason whatsoever" would be nonsense.  *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.") (internal quotation marks and citation omitted).  The Bankruptcy Court's findings that Goldstein was a Qualified Competing Bidder and a Purchaser are affirmed.

Appellant asserts that the Bankruptcy Court committed reversible error in assuming that the shareholder application must have been read by Goldstein's attorney.  However, the court did not "assume" that Goldstein representatives read the shareholder application.  Rather, the Bankruptcy Court found that under the Plan and the Bidding Procedures, the buyer and not the Debtor assumed the risk that the sale would not close because the buyer could not become a Hunts Point shareholder.  It was the buyer's responsibility to assure that it could satisfy Hunts Point's requirements, and the buyer's loss if it could not do so.  As long as the buyer was a Qualified Competing Bidder and a Purchaser as those terms are defined, then the Deposit was subject to forfeiture if the buyer could not close.  Goldstein could not close because, as the Bankruptcy Court found, Goldstein failed to conduct any due diligence, and failed even to read the shareholder application that was provided prior to the auction.  If Goldstein had done that minimal due diligence, it could have chosen not to bid and would not have suffered a loss.  The Court affirms the Bankruptcy Court's factual finding that Goldstein failed to conduct any due diligence, and affirms that court's holding that Goldstein was required by the terms of the Plan to forfeit the Deposit.  *See In re Oyster Bay Cove, Ltd.*, 161 B.R. 338, 343-44 (Bankr. E.D.N.Y. 1993), *aff'd*, 196 B.R. 251 (E.D.N.Y. 1996) (refusing "to relieve a party from the consequences of his own carelessness" and allowing trustee to retain deposit where highest bidder in auction claimed to not be aware of all of the conditions of sale (quoting *Slaughter's Administrator v. Gerson*, 80 U.S. 379 (1872))).

Appellant argues that the Bankruptcy Court wrongly discounted the testimony of the Goldstein witness who claimed that he was induced by the Debtor to bid on the Coop Shares in exchange for $5,000 cash.  As discussed above, the Bankruptcy Court's findings of fact are measured by a "clearly erroneous" standard.  Particularly with respect to live testimony, the trial

judge is uniquely positioned to evaluate the credibility of a witness and decide what to credit and what to discount.   *See* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); *In re Trico Marine Servs.*, 382 B.R. 201, 207-08 (S.D.N.Y. 2008), *aff'd*, 340 F. App'x 55 (2d Cir. 2009) (counseling "particularly strong deference" to a bankruptcy court's credibility assessments "in light of the factfinder's unique ability to assess the witness") (citation omitted).   Judge Bernstein explicitly stated that he did not find the testimony of the Goldstein witness about the alleged inducement credible, particularly since it was raised for the first time at the hearing. Under these circumstances, the trial court's factual finding was not clearly erroneous.

Appellant objects that *res judicata* applies to the Bankruptcy Court's Auction Order of March 22, 2012, and required the Bankruptcy Court to allow the return of the entire $94,000 deposit.  The Auction Order struck the language, which appears in the Plan, that the Debtor may retain the Goldstein deposit and added a provision that the closing was subject to the resolution of the objection by Hunts Point.  Judge Bernstein rejected appellant's *res judicata* argument during the November 20, 2012 hearing and explained that his order was not a determination on the merits since no one at that point thought that Goldstein would default and that, in any event, he had entered the order to prevent Berlin from the "fait accompli" of automatically forfeiting Goldstein's deposit without any opportunity for Goldstein to be heard.  Judge Bernstein was in the best position to interpret the import of his order.  Moreover, regardless of the prior order, the Bankruptcy Court was entitled to order otherwise if on different facts or reevaluation it chose to do so.  *See Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its

own decisions prior to final judgment.") (internal quotation marks and citation omitted).  The

Court holds that the Bankruptcy Court's March 22, 2013 Auction Order is not a bar to the order

at issue on this appeal.

Appellant objects to the auction procedure on three grounds.  First, Goldstein argues that

the Court must provide adequate and explicit conditions of forfeiture to potential bidders before

the auction.  Second, he asserts that the sale of the Coop Shares contravened existing restrictions

or covenants in a contract or lease in violation of Bankruptcy Code sections 363 and 365.

Finally, he claims that the bid was conducted in violation of the Bidding Procedures because his

bid was accepted even though his deposit was made after rather than before he bid, and because

he did not provide evidence of his financial ability (although he does not dispute that he had the

financial ability to perform).

These arguments are not properly before this Court on appeal as they were not the subject

of the Bankruptcy Court's order at issue here and were not raised as objections at any time

below.  In any event, these objections are without merit.  The Bid Procedures provided explicit

notice that a Qualified Competing Bidder with the winning bid would forfeit its deposit if it

failed to close "for any reason whatsoever."  (Plan § 6.9(i)).  Second, Goldstein does not state

what lease or contract provisions allegedly were violated or how, and there is no lease or contract

in the record on appeal.  Third, Rule 60 of the Federal Rules of Civil Procedure and Bankruptcy

Rule 9024 provided the appropriate procedure for Goldstein to object to the conduct of the

auction.  Goldstein "may not ignore the procedures for redress provided by the governing Rules

and, months later, assert objections seeking to upset a final, non-appealable order."  *In re

Frankel*, 191 B.R. 564, 571 (Bankr. S.D.N.Y. 1995) (citing *In re Charlton*, 708 F.2d 1449, 1454-

55 (9th Cir. 1983)).

Appellant seems to ask that the matter be remanded back to the Bankruptcy Court for consideration of Goldstein's equitable argument.  However, Judge Bernstein already addressed the equitable argument, even though the parties did not raise it, and found that the equities did not favor Goldstein.  The Court affirms that holding.  The Court has considered Goldstein's other arguments and concludes that they likewise lack merit.

For the foregoing reasons, the order of the Bankruptcy Court is hereby AFFIRMED in all respects.

SO ORDERED.

Dated: July 31, 2013
         New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE